UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, et al., | ) ) ) | 1:05-CV-00733-AWI-SMS |
| Plaintiff, | ) ) | FINDINGS AND RECOMMENDATION RE: PLAINTIFF'S MOTION FOR |
| v. | ) ) | DEFAULT JUDGMENT (DOC. 16) |
| REAL PROPERTY LOCATED AT 8647 NINTH STREET, SAN JOAQUIN, FRESNO COUNTY, CALIFORNIA, APN:033-091-24, including all appurtenances and improvements thereto, | ) ) ) ) ) ) | |
| Defendant. | ) ) ) | |

Plaintiff is proceeding with a civil action in this Court. The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rules 72-302(c)(19) and 72-303. Pending before the Court is Plaintiff's motion for default judgment.

I. Background

    A. Complaint

A verified complaint for forfeiture in rem was filed on June 6, 2005, which alleged on information and belief that the Defendant real property was subject to forfeiture because it was, or was derived from, proceeds traceable to violations of 18

1

1  U.S.C. § 1028, fraud and related activity in connection with

2  identification documents and information, and was thus subject to

3  forfeiture to the United States pursuant to 18 U.S.C. §

4  981(a)(1)(C); it was further alleged that the property was

5  proceeds of, or was derived from proceeds traceable to,

6  violations of 18 U.S.C. § 1341, mail fraud, which was an offense

7  that constituted a specified unlawful activity as defined in 18

8  U.S.C. § 1956(c)(7)(A) and was therefore subject to forfeiture to

9  the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

10     The complaint indicated that Plaintiff would proceed

11  pursuant to 18 U.S.C. § 985(b)(1) and (c)(1) to post and serve

12  notice of the complaint and the action, file a lis pendens, and

13  appraise the property pursuant to 19 U.S.C. § 1606.

14          B. <u>Publication and Posting</u>

15     On June 13, 2005, the Court ordered publication pursuant to

16  Rule C(4) of the Supplemental Rules of Certain Admiralty and

17  Maritime Claims, directing that notice of the action and arrest

18  be given in the Fresno Business Journal, a legal newspaper of

19  general circulation, including the Court, title and number of the

20  action; date of the arrest/seizure; identity and/or description

21  of the property arrested/seized; the name, address, and telephone

22  number of the attorney for Plaintiff; a statement that claims of

23  persons entitled to possession or claiming an interest pursuant

24  to Supplemental Rule C(6) of the Federal Rules of Admiralty must

25  be filed with the Clerk and served on the Plaintiff's attorney

26  within thirty days after the date of publication; a statement

27  that answers must be filed and served within twenty days after

28  the filing of the claim, and that in the absence thereof, default

2

might be entered and condemnation ordered; a statement that applications for intervention under Fed. R. Civ. P. 24 by persons claiming maritime liens or other interests should be filed within the thirty days allowed for claims for possession; and the name, address, and telephone number of the United States Marshal and/or Department of Treasury.

On July 29, 2005, Plaintiff filed a marshal's certification and notice that reflected posting the complaint and notice of the complaint on the property on July 14, 2005, at noon.

On September 27, 2005, a declaration of publication was filed that established notice of the posting of July 14, 2005, and publication of all other information as required by the Court's order and by Local Rule A-530.[1]

C. <u>Lis Pendens</u>

On August 17, 2005, Plaintiff filed a notice of having recorded a lis pendens on the property with the Fresno County Recorder on June 20, 2005. The notice was served on Jose Luis Mandujano, 22002 E. Manning Avenue, San Joaquin, CA 93660; Jose Mario Barrera Olivares, FCI Sheridan Federal Correctional Institution, Register Number: 61293-097, 27072 Ballston Road, Sheridan, OR 97378; and Leticia Espino Mandujano, 8647 Ninth Street, San Joaquin, CA 93660.

D. <u>Service and Attempted Service</u>

Certifications filed with the Court further establish additional notice in the form of service or attempted personal

---

[1] The declaration of publication stated that the three publications ordered by the Court were done on three successive dates in 2005, and in another location the declaration reflects that one of the dates of publication was in 2004. Because this action was not filed until 2005, the Court construes the notice of publication to reflect publication on three successive dates in 2005.

service of the complaint, notice of the complaint, application
and order for publication, lis pendens, letter, and associated
and court notices upon Jose Mario Barrerra Olivares, Jose Luis
Mandujano, and Leticia Mandujano.

### 1. Jose Mario Barrera Olivares

As to Jose Mario Barrera Olivares, personal service was
effected on July 6, 2005, at FCI Sheridan at Sheridon, Oregon
(Doc. 4 filed on July 21, 2005).

### 2. Jose Luis Mandujano

With respect to attempts to serve Jose Luis Mandujano,
personal service was attempted on July 14, 2005, at 22002 East
Manning Avenue, San Joaquin, California 93660, the usual place of
abode of Jose, resulting in an inability to locate the person,
with a first attempt resulting in an interview of Jorge
Mandujano, who stated that his brother was living in Mexico, and
with a second attempt resulting in contact with renters who
confirmed that Jose Luis Mandujano did not live there. (Marshal's
certificate, Doc. 6 filed on July 29, 2005, confirmed by the
declaration of Autumn Magee, Plaintiff's paralegal, Doc. 14(2),
filed November 10, 2005.)

With respect to efforts to locate Jose, Patricia Ford-Smith,
a postal inspector for the United States Post Office, declared
under penalty of perjury in a declaration dated November 1, 2005,
and filed with the Court on November 10, 2005, the following
information with respect to Jose Luis Mandujano: The last known
address in this country for Jose Luis Mandujano was 22002 E.
Manning Avenue, San Joaquin, California 93660. (Decl. at ¶ 3.)
Jose Luis Mandujano is a fugitive and his current whereabouts

were unknown. (Id.) On or about September 14, 2005, Patricia
Ford-Smith contacted Colleen Maloney with the U.S. Marshals
Service ("USMS") in Fresno, California to confirm the outstanding
arrest warrant for Jose Luis Mandujano in case number
MG-F-03-2179 issued May 1, 2003. (Id.) Ms. Maloney confirmed that
the arrest warrant is still active for Jose Luis Mandujano. Id.
The Government took the following additional steps to attempt to
locate Jose Luis Mandujano: on or about October 3, 2005, Patricia
Ford-Smith caused a search of the Change of Address Records
System ("COARS") to be done by the Central Forward Section of the
Postal Service for Jose Luis Mandujano. (Id. at ¶ 6.) COARS is a
database at the Postal Service of mail forwarding records. (Id.)
The results were as follows: Box 1422, San Joaquin - box closed
6-10-05, no order; Box 1479, San Joaquin - box closed 3-2-04, no
order; 8647 Ninth Street, San Joaquin - No forward, no street
delivery. (Id.) On or about October 3, 2005, Patricia Ford-Smith
caused a search of the Change of Address Information System
("COAIS") to be done for the last name of Mandujano. (Id. at ¶
7.) COAIS is another database at the Postal Service containing
change of address information. Id. The results were as follows:
22002 E. Manning Avenue, San Joaquin - no record; 8647 Ninth
Street, San Joaquin - no record. (Id.) On or about October 4,
2005, Patricia Ford-Smith caused a search of Accurint to be done
for Jose Mandujano. (Id. at ¶ 8.) Accurint is a LexisNexis law
enforcement database of public records and other people locator
sources. (Id.) The results were as follows: The addresses listed
by Accurint as the current addresses for Jose Mandujano (P.O. Box
96 and P.O. Box 1384, San Joaquin) were closed a long time ago

1  and re-rented to other customers or are still closed. (<u>Id.</u>)

2  On October 4, 2005, Patricia Ford-Smith caused an Anywho internet

3  search, a Switchboard internet search, and a Yahoo people search

4  to be done regarding Jose Luis Mandujano, all with negative

5  results. (<u>Id.</u> at ¶ 9.) On that same day, Patricia Ford-Smith also

6  caused a Google internet search to be done regarding Jose Luis

7  Mandujano with no useful results. (<u>Id.</u>)

8                    3. <u>Leticia Espino Mandujano</u>

9      The marshal's certificate and paralegal Magee's declaration

10 establish that personal service upon Leticia Espino Mandujano was

11 attempted on July 14, 2005, at 8647 Ninth Street, San Joaquin,

12 California 93660, resulting in inability to locate Leticia Espino

13 Mandujano, including a first attempt at 283 South Bordeax,

14 Kerman, California, pursuant to a case agent who reported that

15 Leticia was living there with a brother, which resulted in a

16 contact with a person who reported that he had not seen her in

17 nine months, and a second attempt at Leticia's usual place of

18 abode, which was located at 8647 Ninth Street in San Joaquin,

19 California, during which renters at the residence stated that

20 Leticia did not live there (Certificate, Doc. 7, filed July 29,

21 2005; Declaration of Magee, Doc. 14(2), filed November 10, 2005).

22     Other information concerning efforts to locate Leticia

23 includes information that the last known address in this country

24 for Leticia Mandujano was 8647 Ninth Street, San Joaquin,

25 California 93660. (Decl. of Patricia Ford-Smith filed November

26 10, 2005 at ¶ 10.) She was no longer at that address, and her

27 current whereabouts were unknown. (<u>Id.</u>) Efforts to locate Leticia

28 Mandujano have been unsuccessful. (<u>Id.</u>) The Government took the

                                    6

following additional steps to attempt to locate Leticia Espino
Mandujano: On or about October 4, 2005, Patricia Ford-Smith
caused a search of Accurint to be done for Leticia Miramontes and
Leticia Espino. (Id. at ¶ 11.) The results were as follows: No
current address and no record. (Id.) On that same day, Patricia
Ford-Smith caused an Anywho internet search to be done for
Leticia Mandujano, San Joaquin, with negative results. (Id.) On
that same day and October 13, 2005, Patricia Ford-Smith also
caused a Google internet search for Miramontes, Espino and
Mandujano/San Joaquin with no useful results. (Id.) On October 7,
2005, Patricia Ford-Smith caused a facsimile to be sent to the
U.S. Postal Service to check for Leticia
Miramontes/Mandujano/Espino at the address located at 8647 Ninth
Street, San Joaquin, California. (Id. at ¶ 12.) The response of
no street delivery was received on October 12, 2005. (Id.) On
that same day, Patricia Ford-Smith caused a facsimile to be sent
to the U.S. Postal Service to check for Leticia
Miramontes/Mandujano/Espino at the address located at
P.O. Box 1479, San Joaquin, California. (Id.) The response of box
closed, no (mail forwarding) order was received on October 12,
2005. (Id.) On or about October 7, 2005, Patricia Ford-Smith
caused a search of COAIS to be done for Leticia Miramontes for
P.O. Box 1479, San Joaquin, California. Id. at ¶ 13. The result
was no forwards found. (Id.) On or about October 11, 2005,
Patricia Ford-Smith caused a search of COAIS to be done for any
forwards from street address 24634 W. Manning Avenue, San
Joaquin, California. (Id.) The result was no forwards found in
any names used by Leticia Mandujano. (Id.) On or about October

7

11, 2005, Patricia Ford-Smith caused a search of COAIS to be done for any forwards from street address: 8647 Ninth Street, San Joaquin, California. (<u>Id.</u>) The result was no old or new forwards found. (<u>Id</u>.) On or about October 11, 2005, Patricia Ford Smith caused a search of COARS to be done by the Central Forward Section of the Postal Service for Leticia Mandujano. (<u>Id.</u> at ¶ 14.) No mail forwards were found. (<u>Id.</u>) On October 19, 2005, Patricia Ford-Smith caused scanned photos of Leticia Mandujano and Jose Mandujano to be emailed to Ralph Perez, Postmaster, San Joaquin, California. (<u>Id.</u> at ¶ 15.) On October 20, 2005, a response was received wherein Ralph Perez said that he did recognize the photo of Leticia Mandujano, but he had not seen her for a couple years since P.O. Box 1479, San Joaquin, California was closed. (<u>Id.</u>)

### E. <u>Response to the Complaint</u>

The declarations and the docket establish that no party has responded to the complaint. Defaults were entered against Jose Mario Barrera Olivares on October 7, 2005, and against Jose Mandujano and Leticia Mandujano on December 21, 2005.

### F. <u>Motion for Default Judgment</u>

Plaintiff filed an ex parte application for default judgment on January 27, 2006, with a memorandum of points and authorities. ex parte for the entry of a default judgment against the interests of Jose Luis Mandujano, Leticia Espino Mandujano and Jose Mario Barrera Olivares in the below-described defendant real property, and for entry of a final judgment of forfeiture that vests in the United States of America all right, title and interest in the defendant real property. Pursuant to the Court's

order, Plaintiff filed supplemental briefs on February 16, 2006, and April 21, 2006. No opposition has been filed in connection with the motion. By order dated March 22, 2006, the hearing on the motion was vacated, and the matter was submitted to the Court for decision upon the filing of the final supplemental brief.

   III. <u>Standards Governing a Motion for Default Judgment</u>

   A court has the discretion to enter a default judgment against one who is not an infant, incompetent, or member of the armed services where the claim is for an amount that is not certain on the face of the claim and where 1) the defendant has been served with the claim; 2) the defendant's default has been entered for failure to appear; 3) if the defendant has appeared in the action, the defendant has been served with written notice of the application for judgment at least three days before the hearing on the application; and 4) the court has undertaken any necessary and proper investigation or hearing in order to enter judgment or carry it into effect. Fed. R. Civ. P. 55(b); <u>Alan Neuman Productions, Inc. v. Albright,</u> 862 F.2d 1388, 1392 (9th Cir. 1988). Factors that may be considered by courts in exercising discretion as to the entry or setting aside of a default judgment include the nature and extent of the delay, <u>Draper v. Coombs</u>, 792 F.2d 915, 924-925 (9th Cir. 1986); the possibility of prejudice to the plaintiff, <u>Eitel v. McCool</u>, 782 F.2d 1470, 1471-72 (9th Cir.1986); the merits of plaintiff's substantive claim, <u>id.</u>; the sufficiency of the allegations in the complaint to support judgment, <u>Alan Neuman Productions, Inc.</u>, 862 F.2d at 1392; the amount in controversy, <u>Eitel v. McCool</u>, 782 F.2d at 1471-1472; the possibility of a dispute concerning

material facts, _id.;_ whether the default was due to excusable
neglect, _id.;_ and the strong policy underlying the Federal Rules
of Civil Procedure that favors decisions on the merits, _id._

A default judgment generally bars the defaulting party from
disputing the facts alleged in the complaint, but the defaulting
party may argue that the facts as alleged do not state a claim.
_Alan Neuman Productions, Inc. v. Albright,_ 862 F.2d 1388, 1392.
Thus, well pleaded factual allegations, except as to damages, are
taken as true; however, necessary facts not contained in the
pleadings, and claims which are legally insufficient, are not
established by default. _Cripps v. Life Ins. Co. of North America,_
980 F.2d 1261, 1267 (9th Cir. 1992); _TeleVideo Systems, Inc. v._
_Heidenthal,_ 826 F.2d 915, 917 (9th Cir. 1987).

   IV. _Notice, Status of the Parties, and Response to the_
   _____ _Complaint_

      A. _Governing Standards_

With respect to default judgments in proceedings that are in
rem actions for forfeiture, both the general Federal Rules of
Civil Procedure and the Supplemental Rules for Certain Admiralty
and Maritime Claims (Supp. R.) apply, but the latter rules
prevail if there is an inconsistency. Supp. R. A(1). Supp. R.
C(1)(a) permits an action in rem to be brought whenever a statute
of the United States provides for a proceeding analogous to a
maritime action in rem.

Local Rule A-500 provides that the local admiralty and in
rem rules apply to all in rem and quasi in rem proceedings and
control all such proceedings in the event of an inconsistency
between the in rem rules and the local rules ending in 100

through 399.

Local Rule A-540(d) provides that a party seeking a default judgment in an action in rem shall show to the satisfaction of the Court that due notice of the action and arrest of the property has been given by publication, by personal service on the person having custody of the property, by personal service or by certified mail, return receipt requested, to every person who has not appeared and is known to have an interest, provided, that failure to give actual notice to such other person may be excused upon a satisfactory showing of diligent efforts to give such notice without success. Specifically, if the defendant property is of such character that there exists a registry of recorded property interests in the property, the party must obtain information from each such registry and give notice to the persons named in the records of each such registry. Local Rule A-540(b).

Local Rule A-540(d) provides that upon a showing that no one has appeared to claim the property and give security, and that due notice of the action and arrest of the property has been given, a party may move for judgment at any time after the time for answer has expired. If no one has appeared, the party may have an ex parte hearing before the Court and judgment without further notice, although if any person has appeared and does not join in the motion, such person shall be given seven court days notice of the motion.

### B. No Warrent of Arrest in Rem

The Civil Asset Forfeiture Reform Act of 2000 (CAFRA), Pub. L. No. 106-185, 114 Stat. 202, 106th Cong. (2000) was signed into

law on April 25, 2000. Section 21 of the Act provides that the amendments made by the Act apply to any forfeiture proceeding commenced on or after the effective date of the Act, that is, 120 days after the date of enactment. The instant case postdates enactment of the statute, and thus, CAFRA applies to the instant proceeding.

Under CAFRA, all civil forfeitures of real property and interests therein shall proceed as judicial forfeitures. 18 U.S.C. § 985(a). Except when exigent circumstances have been determined to be present and an exceptional warrant procedure is followed, real property that is the subject of a civil forfeiture action shall not be seized[2] before entry of an order of forfeiture, nor shall occupants or owners be evicted or deprived of use and enjoyment of the property. § 985(b)(1), (d). Instead, if real property is posted as required by statute, it is unnecessary for the Court to issue an arrest warrant in rem, or to take any other action to establish in rem jurisdiction over the property. § 985(c)(3).

C. Notice

The government shall initiate a civil forfeiture action against real property by filing a complaint for forfeiture, posting a notice of the complaint on the property, and serving notice on the property owner, along with a copy of the complaint. § 985(c)(1). However, constructive service may be made in accordance with the laws of the state in which the property is located if the property owner cannot be served with the notice of

---

[2] The filing of a lis pendens and execution of a writ of entry is not a seizure. § 985(b)(2).

1 the complaint and the complaint because the owner is a fugitive,
2 resides outside the United States and efforts at service pursuant
3 to rule 4 of the Federal Rules of Civil Procedure are unavailing,
4 or cannot be located despite the exercise of due diligence. §
5 985(c)(2).

### 1. Publication

7     Plaintiff cites to Supp. Rule C(4), which provides that no
8 notice other than execution of process is required when the
9 property that is the subject of the action has been released
10 under Rule E(5); if the property is not released within ten days
11 after execution, then the Plaintiff must promptly, or within the
12 time allowed by the Court, give public notice of the action and
13 arrest and specify the time to file a statement of interest in or
14 right against the seized property and to answer, in a newspaper
15 designated by court order and having general circulation in the
16 district.

17     Here, Plaintiff gave notice by publication as ordered by the
18 Court and in compliance with the requirements of Supp. Rule C(4).

### 2. Service of Notice and Complaint on the Owner

20     Title 18 U.S.C. § 985(c)(1)(C) requires that a party seeking
21 a default judgment in rem show that due notice of the complaint
22 and the complaint have been served on the property owner. Section
23 985(c) provides:

24     (c)(1) The Government shall initiate a civil forfeiture
    action against real property by--
25     (A) filing a complaint for forfeiture;
    (B) posting a notice of the complaint on the property;
26     and
    (C) serving notice on the property owner, along with a copy
27     of the complaint.
    (2) If the property owner cannot be served with the notice
28     under paragraph (1) because the owner--

(A) is a fugitive;
(B) resides outside the United States and efforts at
service pursuant to rule 4 of the Federal Rules of
Civil Procedure are unavailing; or
(C) cannot be located despite the exercise of due diligence,
constructive service may be made in accordance with
the laws of the State in which the property is located.

Plaintiff argues that its notice was constitutionally sufficient. However, despite being invited to do so, Plaintiff does not address the sufficiency of the service of notice under § 985(c), which sets forth the statutory standard.

Section 985(c) permits constructive service to be made in accordance with the laws of the State in which the property is located. Under California law, it is established that even where there is a statutory basis of jurisdiction over a person or thing, and notice is given in a manner that will satisfy the requirements of constitutional due process, statutes nevertheless prescribe the manner in which notice shall be given, and generally strict compliance with the statutory procedure of notice is required in order to obtain jurisdiction. People v. Green, 74 Cal. 400, 405-06 (1887); Stamps v. Superior Court, 14 Cal.App.3d 108, 110 (1971); Arnold v. Newhall County Water District, 11 Cal.App.3d 794, 799-802 (1970) (strict compliance with publication statute governing acquisition of in rem jurisdiction).[3]

Cal. Civ. Proc. Code § 415.20 provides:

(a) In lieu of personal delivery of a copy of the
summons and complaint to the person to be served as
specified in Section 416.10, 416.20, 416.30, 416.40,
or 416.50, a summons may be served by leaving a copy
of the summons and complaint during usual office hours

---

[3] A more liberal construction is permitted where there is actual notice. Stafford v. Mach, 64 Cal.App.4th 1174, 1182-83 (1998).

in his or her office or, if no physical address is known,
at his or her usual mailing address, other than a
United States Postal Service post office box,
with the person who is apparently in charge thereof,
and by thereafter mailing a copy of the summons and
complaint by first- class mail, postage prepaid to the
person to be served at the place where a copy of
the summons and complaint were left. When service is
effected by leaving a copy of the summons and complaint
at a mailing address, it shall be left with a person at
least 18 years of age, who shall be informed of the
contents thereof. Service of a summons in this manner
is deemed complete on the 10th day after the mailing.

(b) If a copy of the summons and complaint cannot with
reasonable diligence be personally delivered to the
person to be served, as specified in Section 416.60,
416.70, 416.80, or 416.90, a summons may be served by
leaving a copy of the summons and complaint at the
person's dwelling house, usual place of abode,
usual place of business, or usual mailing address
other than a United States Postal Service post office box,
in the presence of a competent member of the household
or a person apparently in charge of his or her office,
place of business, or usual mailing address other
than a United States Postal Service post office box,
at least 18 years of age, who shall be informed of the
contents thereof, and by thereafter mailing a copy of the
summons and of the complaint by first-class mail, postage
prepaid to the person to be served at the place where
a copy of the summons and complaint were left.
Service of a summons in this manner is deemed
complete on the 10th day after the mailing.

Generally several attempts to serve a party qualify as due

diligence under the California provisions for substituted service

under Cal. Civ. Proc. Code § 415.20. Bonita Packing Co. v.

O'Sullivan, 165 F.R.D. 610, 613 (C.D.Cal. 1995). It appears that

Plaintiff has diligently attempted to effectuate personal service

on Jose Luis Mandujano and Leticia Espino Mandujano.

With respect to compliance with the statutory requirements,

although efforts were made to serve Jose at East Manning Avenue,

the usual place of abode, papers were not left with persons there

or later mailed there. Likewise, with respect to efforts to serve

Leticia Espino Mandujano, efforts were made to locate Leticia at

15

two addresses in San Joaquin and Kerman, including places reported to be a residence of Leticia or a usual place of abode, but no papers were left with persons there or later mailed there. Thus, substituted service in compliance with the requirements of § 415.20 was not accomplished.

A type of constructive service is provided for in California in the form of service by publication. Cal. Civ. Proc. Code § 415.50 provides:

> (a) A summons may be served by publication if upon affidavit it appears to the satisfaction of the court in which the action is pending that the party to be served cannot with reasonable diligence be served in another manner specified in this article and that either:

> (1) A cause of action exists against the party upon whom service is to be made or he or she is a necessary or proper party to the action.

> (2) The party to be served has or claims an interest in real or personal property in this state that is subject to the jurisdiction of the court or the relief demanded in the action consists wholly or in part in excluding the party from any interest in the property.

> (b) The court shall order the summons to be published in a named newspaper, published in this state, that is most likely to give actual notice to the party to be served. If the party to be served resides or is located out of this state, the court may also order the summons to be published in a named newspaper outside this state that is most likely to give actual notice to that party. The order shall direct that a copy of the summons, the complaint, and the order for publication be forthwith mailed to the party if his or her address is ascertained before expiration of the time prescribed for publication of the summons. Except as otherwise provided by statute, the publication shall be made as provided by Section 6064 of the Government Code unless the court, in its discretion, orders publication for a longer period.
> (c) Service of a summons in this manner is deemed complete as provided in Section 6064 of the Government Code.

Cal. Govt. Code § 6064 provides:

16

Publication of notice pursuant to this section
shall be once a week for four successive weeks.
Four publications in a newspaper regularly published
once a week or oftener, with at least five days
intervening between the respective publication
dates not counting such publication dates, are sufficient.
The period of notice commences with the first day
of publication and terminates at the end of the
twenty-eighth day, including therein the first day.

Here, the declaration of publication filed by Plaintiff on

September 27, 2005, indicates that publication occurred only on

three dates. Thus, Plaintiff did not comply with California's

statutory requirements for service by publication.

Plaintiff does not provide any authority supporting a

finding of the sufficiency of the notice given in this case

except for constitutional authority. The constitutional

principles cited by Plaintiff are clear. Although Supplemental

Rule C(4) requires the government only to give notice of the

forfeiture action by publication, when the government can

reasonably ascertain the name and address of an interested party,

notice by publication is not sufficient; due process requires

that the government send notice by mail or other means as certain

to ensure actual notice, or such notice as is reasonably

calculated under all of the circumstances to apprise the person

of the pendency of the forfeiture. United States v. Real

Property, 135 F.3d 1312, 1315 (9th Cir. 1998); Dusenbery v. United

States, 534 U.S. 161, 168 (2002)(holding that sending certified

mail to the custodial institution where the party was being held

as well as to the residence where the arrest occurred, and to the

address in the town where the party's mother lived, satisfied due

process even though it did not result in actual notice to the

person). "The means employed must be such as one desirous of

17

1 actually informing the absentee might reasonably adopt to
2 accomplish it." <u>Mullane v. Central Hanover Bank & Trust Co.</u>, 339
3 U.S. 306, 314-315 (1950).  Due process does not require, however,
4 that the interested party actually receive notice. So long as the
5 government acted reasonably in selecting means likely to inform
6 the persons affected, then it has discharged its burden. <u>United</u>
7 <u>States v. 51 Pieces of Real Property</u>, 17 F.3d 1306, 1316 (10th
8 Cir.1994). Written notice by certified mail to the claimant's
9 residence is generally sufficient, even if the notice is never
10 actually received. <u>Garcia v. Meza</u>, 235 F.3d 287, 290 (7th Cir.
11 2000).

12     However, the constitutional adequacy of notice by itself
13 does not demonstrate compliance with statutory requirements.
14 Plaintiff does not demonstrate how Plaintiff's attempts at
15 locating Jose and Leticia satisfied the statutory requirements of
16 the law of California with respect to constructive service.

17     Local Rule A-540(a) requires that Plaintiff show to the
18 satisfaction of the court that due notice of the action and
19 arrest have been given by publication pursuant to Local Rule A-
20 530, and by personal service on the person having custody of the
21 property, <u>and by personal service or by certified mail</u>, return
22 receipt requested, to every other person who has not appeared in
23 the action and is known to have an interest in the property,
24 provided that a failure of actual notice to such other person may
25 be excused upon a satisfactory showing of diligent efforts to
26 give such notice without success. Plaintiff has not complied with
27 this rule, either, which requires at the least certified mail
28 service.

1    Plaintiff further relies on Fed. R. Civ. P. 4(n)(1), which

2  provides:

3         If a statute of the United States so provides, the
          court may assert jurisdiction over property. Notice
4         to claimants of the property shall then be sent in the
          manner provided by the statute or by service of a
5         summons under this rule.

6    Here, as previously discussed, notice complying with the

7  federal statutory requirements has not been given. Although the

8  government has effectuated personal service on Jose Mario Barrera

9  Olivares, there has been no effective service of a summons under

10 Rule 4 on Jose and Leticia Mandujano, as would be required by

11 Rule 4.

12   Plaintiff argues that this case is like <u>United States v.</u>

13 <u>Schiavo</u>, 897 F.Supp. 644 (D.Mass 1995), wherein published notice

14 with personal notices by certified mail to a last known residence

15 were sufficient. However, this case differs from <u>Schiavo</u> because

16 here no certified mail notices were sent to the last known

17 residence.

18   The Court therefore concludes that notice has not been given

19 as is required by 18 U.S.C. § 985(c) or Supp. Rule C(4).

20 Accordingly, Plaintiff has not established that it is entitled to

21 default judgment of forfeiture because the requisite notice has

22 not been given to potential claimants, one of whom was the record

23 owner of the property. Plaintiff thus cannot be entitled to a

24 default judgment against these parties or against the world.

25         D. <u>Status of the Parties</u>

26   Magee declared that Defendant Jose Mario Barrera Olivares

27 was not an infant, incompetent, or a person in military service.

28 (Doc. 11(2), filed September 27, 2005.) Magee declared in a

declaration dated November 4, 2005, that Jose Luis Mandujano and
Leticia Espino Mandujano were not infants, incompetents, or
members of the military service. (Doc. 14(2), filed November 10,
2005.) Thus, it appears that no issues concerning the competence
or status of the parties would render a default judgment
inappropriate.

E. <u>Response to the Complaint</u>

Title 18 U.S.C. § 983 provides general rules for civil
forfeiture proceedings. Section 983(a)(3)(A) provides that within
a specified time period after nonjudicial proceedings, the
government shall file a complaint for forfeiture in the manner
set forth in the Supplemental Rules of Certain Admiralty and
Maritime Claims. Any person claiming an interest in the seized
property may file a claim asserting such person's interest in the
property in the manner set forth in the Supp. Rules, except that
such claim may be filed not later than thirty days after the date
of service of the government's complaint or, as applicable, not
later than thirty days after the date of final publication of
notice of the filing of the complaint. Further, a person
asserting an interest in the seized property shall file an answer
to the complaint not later than twenty days after the date of the
filing of the claim. 18 U.S.C. § 983(a)(4).

Supp. R. C(6) provides:

(a) Civil Forfeiture. In an in rem forfeiture
action for violation of a federal statute:
(i) a person who asserts an interest in or right
against the property that is the subject of the action
must file a verified statement identifying the
interest or right:
(A) within 30 days after the earlier of
1) the date of service of the Government's complaint
or

1     (2) completed publication of notice under Rule C(4),
      or
2     (B) within the time that the court allows.
      . . . .
3     (iii) a person who files a statement of interest in
      or right against the property must serve and file
4     an answer within 20 days after filing the statement.

5       Here, the time has passed, and no one has filed a statement

6  or answer. A failure to comply with the requirements of Supp.

7  Rule 6 precludes one from establishing standing as a party, and

8  results in an inability to challenge a default judgment. <u>See</u>,

9  <u>United States v. Real Property</u>, 135 F.3d 1312, 1316-17 (9th Cir.

10 1998).

11      V. <u>Legal Sufficiency of the Complaint</u>

12          A. <u>Facts</u>

13      In this case, the Government alleges in its verified

14 complaint that the Defendant real property is located at 8647

15 Ninth Street, San Joaquin, California, APN:033-091-24, and is

16 more fully described as:

17     Lots 25 and 26 in Block 10 of the Townsite of San
       Joaquin, (now City of San Joaquin), in the County
18     of Fresno, State of California, according to the map
       thereof recorded in Book 7, Pages 83, 84 and 85 of Plats,
19     Fresno County Records.
       APN:033-091-24.
20
   (Complt. at 1-2.) The allegations in the complaint arise out of
21
   the same investigation underlying the parallel criminal
22
   prosecution of Antonio Mandujano Espino, Rosa Mandujano, Jose
23
   Mario Barrera Olivares, Elisa Espino Martinez, Ruben Espino,
24
   Manuel Espino Martinez, and others in <u>United States v. Antonio</u>
25
   <u>Mandujano Espino, et al.</u>, CR-F-03-5199 REC.
26
27      The essential facts alleged in the complaint are that

28 Defendant real property was purchased in 1999 and 2000 by Jose

Mario Barrera Olivares (Olivares), an unmarried man, who was actually the husband of Leticia Mandujano, also known as Leticia Espino Mandujano (Leticia), and who took title to the property using a false name, namely, Jose Luis Mandujano. The property was purchased with proceeds from a scheme that operated from February 1998 through April 30, 2003, whereby Olivares, Leticia, and others conspired to file, and did file, false telephonic claims and mailed false claim forms to Unemployment Insurance (UI) agents; obtained UI benefit checks by using the identities and social security numbers of unknowing individuals and by listing various post office boxes under their control as being the mailing addresses of the claimants; falsely endorsed and then deposited the checks into business bank accounts under their control, using the accounts to make it appear that numerous UI claimants actually went to the business to cash their UI benefit checks; withdrew substantial cash withdrawals from the accounts; and used the accounts to promote the scheme as well as to buy real property. (Complt at 2-3.) Olivares was sentenced for his role in the scheme on August 23, 2004, and was ordered to pay $1,331,824.00 in restitution jointly with a codefendant.

Further, Jane Avila, the former owner of Defendant real property, conducted numerous real estate transactions with Olivares, Jose Luis Mandujano, and Leticia, including selling the Defendant real property to Jose Luis Mandujano for $75,000 on or about November 29, 1999; the majority of payments for the real property were made by Leticia between January 1999 and March 18, 2000, after which a grant deed issued from Avila and her husband to Jose Luis Mandujano, an unmarried man. (Id. at 3-4.) Olivares

1 was arrested at Defendant real property in April 2004, and he

2 told law enforcement officers that he had lived there for three

3 years with his wife, Leticia, who admitted having lived at the

4 property for five years. Law enforcement searched the property

5 and located numerous California identifications for Olivares, one

6 being in the name of Jose Luis Mandujano, recorded owner of the

7 real property. Corroborative information revealed that one who

8 was actually named Jose Luis Mandujano Espino had no real

9 property. Further, one Rosa Mandujano, who had been sentenced in

10 connection with charges concerning the scheme, told law

11 enforcement that Leticia was the main leader in the UI scheme,

12 Leticia had purchased about six homes in San Joaquin with the

13 money she obtained from the UI fraud, and Leticia had no job or

14 legitimate income. Rosa stated that her husband, Antonio

15 Mandujano, had a brother named Jose Luis Mandujano, but she

16 believed that Leticia's husband, Jose Mario Barrera Olivares,

17 stole Jose Luis Mandujano's identity by obtaining a California

18 drivers license in his name and purchased the real property using

19 the false identification. EDD wage records revealed no history of

20 wages for Olivares or Leticia. (Id. at 4-6.)

21        B. <u>Analysis</u>

22           1. <u>Requirements of Supp. Rule C</u>

23     The relevant portions of Supp. R. Adm. C(2) indicates that,

24 in an action in rem, the complaint must:

25     (a) be verified;
    (b) describe with reasonable particularity the property that

26     is the subject of the action;
    . . .

27     (d) in a forfeiture proceeding for violation of a federal
    statute, state: (i) the place of seizure and whether it was

28     on land or on navigable waters; (ii) whether the property is

within the district, and if the property is not within the district the statutory basis for the court's exercise of jurisdiction over the property; and (iii) all allegations required by the statute under which the action is brought.

It appears that the requirements of Supp. Rule c(2)(a) through (d)(ii) have been met.

### 2. Legal Sufficiency

As to the allegations required by the statute under which the action is brought, under CAFRA, the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture. 18 U.S.C. § 983(c)(1).

Title 18 U.S.C. § 981(a)(1)(C) in pertinent part categorizes as subject to forfeiture to the United States any property, real or personal, which constitutes, or is derived from, proceeds traceable to a violation of § 1028, fraud and related activity in connection with identification documents and information.

Title 18 § 981(a)(1)(C) also makes subject to forfeiture to the United States any property, real or personal, which constitutes proceeds or is derived from proceeds traceable to any offense constituting "specified unlawful activity" as defined in 18 U.S.C. § 1956(c)(7), or a conspiracy to commit such an offense.

Plaintiff alleges in the complaint (at 6) that § 1341, mail fraud, constitutes an offense that is "specified unlawful activity" as defined in 18 U.S.C. § 1956(c)(7). Section 1956(c)(7)(A) provides in pertinent part that "specified unlawful activity" includes any act or activity constituting an offense listed in § 1961(1) of this title, with inapplicable exceptions. Section 1961(1)(B) includes in racketeering activity any act

1  indictable under 18 U.S.C. § 1341 relating to mail fraud. Thus,

2  property constituting proceeds from, or property traceable to

3  proceeds from, mail fraud would be subject to forfeiture pursuant

4  to 18 U.S.C. § 981(a)(1)(C).

5      Title 18 U.S.C. § 1341 provides:

6      Whoever, having devised or intending to devise any
       scheme or artifice to defraud, or for obtaining money
7      or property by means of false or fraudulent pretenses,
       representations, or promises, or to sell, dispose of,
8      loan, exchange, alter, give away, distribute, supply,
       or furnish or procure for unlawful use any counterfeit
9      or spurious coin, obligation, security, or other
       article, or anything represented to be or intimated or
10     held out to be such counterfeit or spurious article,
       for the purpose of executing such scheme or artifice or
11     attempting so to do, places in any post office or
       authorized depository for mail matter, any matter or
12     thing whatever to be sent or delivered by the Postal
       Service, or deposits or causes to be deposited any
13     matter or thing whatever to be sent or delivered by any
       private or commercial interstate carrier, or takes or
14     receives therefrom, any such matter or thing, or
       knowingly causes to be delivered by mail or such
15     carrier according to the direction thereon, or at the
       place at which it is directed to be delivered by the
16     person to whom it is addressed, any such matter or
       thing, shall be fined under this title or imprisoned
17     not more than 20 years, or both. If the violation
       affects a financial institution, such person shall be
18     fined not more than $1,000,000 or imprisoned not more
       than 30 years, or both.

19

20  To convict one of mail fraud, the government must prove 1) a

21  scheme to defraud existed; and 2) the defendant used the mails

22  for the purpose of executing the scheme. United States v. Serang,

23  156 F.3d 910, 914 (9th Cir. 1998). Further, the government must

24  prove a specific intent to defraud. United States v. Peters, 962

25  F.2d 1410, 1414 (9th Cir.1992). Here, the scheme and the use of

26  the mails is expressly alleged. The specific intent to defraud

27  may be readily inferred from the details regarding the scheme.

28      Plaintiff asserts that the government must establish the

1 requisite nexus between the substantive offense of mail/wire

2 fraud, and the asset that it seeks to forfeit. Plaintiff states

3 that the requisite nexus in the case is determined by reference

4 to 18 U.S.C. § 981(a)(1)(C), which Plaintiff states provides:

5 "(a)(1) Except as provided in paragraph (2), the following

6 property is subject to forfeiture to the United States: ... ( C )

7 Any property, real or personal, which constitutes or is derived

8 from proceeds traceable to a violation of section ...1341 ...."

9     It is alleged that the property sought to be forfeited is,

10 or is derived from, proceeds traceable to violations of 18 U.S.C.

11 § 1341. Plaintiff argues that the property at issue in this case

12 is traceable to a violation of 18 U.S.C. § 1341 and is therefore

13 forfeitable. Plaintiff asserts that in proceeds cases under

14 CAFRA, the Government must prove by a preponderance of the

15 evidence that the property was derived from a criminal offense,

16 or that the offense is traceable to such property.

17     It is alleged in the complaint that the fraudulent

18 unemployment insurance scheme was operated by Defendants and

19 others between February 1998 and April 2003; the scheme generated

20 over $8,000,000.00 and was accompanied by substantial cash

21 withdrawals from accounts into which the proceeds were deposited;

22 Defendants had no legitimate income; and some of the money was

23 used to buy the subject real property, where Defendants Leticia

24 and Jose resided, as demonstrated by statements of persons

25 involved in the scheme as well as the circumstances of the sale,

26 its terms, and payments to Jane Avila. (Cmplt. at 2-6.)

27     Accordingly, the complaint sufficiently states a claim for

28 forfeiture of property pursuant to 18 §§ 981(a)(1)(C) and

1  1956(c)(7).

2      VI. <u>Judgment</u>

3      Local Rule A-540(d) provides that upon a showing that no one

4  has appeared to claim the property and give security, and that

5  due notice of the action and arrest of the property has been

6  given, a party may move for judgment at any time after the time

7  for answer has expired; if no one has appeared, the party may

8  have an ex parte hearing before the Court and judgment without

9  further notice.

10     Here, no one has claimed an interest in the property or

11 otherwise responded to the complaint. Absent concerns with

12 respect to notice, no just cause for delay appears. It is

13 apparent from the declarations submitted to the Court that none

14 of the potential claimants is an infant, incompetent, or member

15 of the armed services. There does not appear to be any reason why

16 the general policy in favor of a decision on the merits would

17 warrant refusing to enter the requested default judgment.

18     However, Plaintiff has not demonstrated that the required

19 notice was given to Jose Luis Mandujano and Leticia Espino

20 Mandujano as required by the forfeiture statute.

21     Accordingly, the Court finds that Plaintiff has not shown

22 its entitlement to a default judgment of forfeiture.

23                     <u>RECOMMENDATION</u>

24     Accordingly, it IS RECOMMENDED that Plaintiff's motion for

25 default judgment BE DENIED.

26     This report and recommendation is submitted to the United

27 States District Court Judge assigned to the case, pursuant to the

28 provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the

Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:    May 3, 2006**                         _____/s/ Sandra M. Snyder_____
icido3                                           UNITED STATES MAGISTRATE JUDGE