1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, et al., | ) ) ) | 1:05-CV-00733-AWI-SMS |
| Plaintiff, | ) ) | FINDINGS AND RECOMMENDATION RE: PLAINTIFF'S SECOND MOTION |
| v. | ) ) | FOR DEFAULT JUDGMENT (DOC. 31) |
| REAL PROPERTY LOCATED AT 8647 NINTH STREET, SAN JOAQUIN, FRESNO COUNTY, CALIFORNIA, APN:033-091-24, including all appurtenances and improvements thereto, | ) ) ) ) ) ) | |
| Defendant. | ) ) ) | |

Plaintiff is proceeding with a civil action in this Court. The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rules 72-302(c)(19) and 72-303. Pending before the Court is Plaintiff's second motion for default judgment. A previous motion for default judgment was considered and was denied on August 18, 2006.

I. Background

A. Complaint

A verified complaint for forfeiture in rem was filed on June 6, 2005, which alleged on information and belief that the Defendant real property was subject to forfeiture because it was,

1

1  or was derived from, proceeds traceable to violations of 18

2  U.S.C. § 1028, fraud and related activity in connection with

3  identification documents and information, and was thus subject to

4  forfeiture to the United States pursuant to 18 U.S.C. §

5  981(a)(1)(C); it was further alleged that the property was

6  proceeds of, or was derived from proceeds traceable to,

7  violations of 18 U.S.C. § 1341, mail fraud, which was an offense

8  that constituted a specified unlawful activity as defined in 18

9  U.S.C. § 1956(c)(7)(A) and was therefore subject to forfeiture to

10 the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

11         The complaint indicated that Plaintiff would proceed

12 pursuant to 18 U.S.C. § 985(b)(1) and (c)(1) to post and serve

13 notice of the complaint and the action, file a lis pendens, and

14 appraise the property pursuant to 19 U.S.C. § 1606.

15              B. <u>Publication and Posting</u>

16         On June 13, 2005, the Court ordered publication pursuant to

17 Rule C(4) of the Supplemental Rules of Certain Admiralty and

18 Maritime Claims,[1] directing that notice of the action and arrest

19 be given in the Fresno Business Journal, a legal newspaper of

20 general circulation, including the Court, title and number of the

21 action; date of the arrest/seizure; identity and/or description

22 of the property arrested/seized; the name, address, and telephone

23 number of the attorney for Plaintiff; a statement that claims of

24 persons entitled to possession or claiming an interest pursuant

25 to Supplemental Rule C(6) of the Federal Rules of Admiralty must

26 be filed with the Clerk and served on the Plaintiff's attorney

27

28
         [1] Supp. R. G took effect on December 1, 2006, after the commencement of the action.

1   within thirty days after the date of publication; a statement

2   that answers must be filed and served within twenty days after

3   the filing of the claim, and that in the absence thereof, default

4   might be entered and condemnation ordered; a statement that

5   applications for intervention under Fed. R. Civ. P. 24 by persons

6   claiming maritime liens or other interests should be filed within

7   the thirty days allowed for claims for possession; and the name,

8   address, and telephone number of the United States Marshal and/or

9   Department of Treasury.

10      On July 29, 2005, Plaintiff filed a marshal's certification

11  and notice that reflected posting the complaint and notice of the

12  complaint on the property on July 14, 2005, at noon.

13      On September 27, 2005, a declaration of publication was

14  filed that established notice of the posting of July 14, 2005,

15  and publication of all other information as required by the

16  Court's order and pertinent rules.[2]

17      A declaration filed on December 5, 2006, reflects that

18  additional publication occurred in <u>The Business Journal</u> on

19  November 1, 8, 15, and 22, 2006. (Doc. 30 [signature illegible].)

20          C. <u>Lis Pendens</u>

21      On August 17, 2005, Plaintiff filed a notice of having

22  recorded a lis pendens on the property with the Fresno County

23  Recorder on June 20, 2005. The notice was served on Jose Luis

24  Mandujano, 22002 E. Manning Avenue, San Joaquin, CA 93660; Jose

25  Mario Barrera Olivares, FCI Sheridan Federal Correctional

26

27      [2] The declaration of publication stated that the three publications ordered by the Court were effected on three successive dates in 2005, and in another location the declaration reflected that one of the dates of publication was in 2004. Because this action was not filed until 2005, the Court construes the notice of publication to reflect publication on three successive dates in 2005.

28

Institution, Register Number: 61293-097, 27072 Ballston Road, Sheridan, OR 97378; and Leticia Espino Mandujano, 8647 Ninth Street, San Joaquin, CA 93660.

### D. Service and Attempted Service

Certifications filed with the Court further establish additional notice in the form of service or attempted personal service of the complaint, notice of the complaint, application and order for publication, lis pendens, letter, and associated and court notices upon Jose Mario Barrerra Olivares, Jose Luis Mandujano, and Leticia Mandujano.

### 1. Jose Mario Barrera Olivares

As to Jose Mario Barrera Olivares, personal service was effected on July 6, 2005, at FCI Sheridan at Sheridon, Oregon (Doc. 4 filed on July 21, 2005).

### 2. Jose Luis Mandujano

With respect to attempts to serve Jose Luis Mandujano, the recorded owner of the property, personal service was attempted on July 14, 2005, at 22002 East Manning Avenue, San Joaquin, California 93660, the usual place of abode of Jose, resulting in an inability to locate the person, with a first attempt resulting in an interview of Jorge Mandujano, who stated that his brother was living in Mexico, and with a second attempt resulting in contact with renters who confirmed that Jose Luis Mandujano did not live there. (Marshal's certificate, Doc. 6 filed on July 29, 2005, confirmed by the declaration of Autumn Magee, Plaintiff's paralegal, Doc. 14(2), filed November 10, 2005.)

With respect to efforts to locate Jose, Patricia Ford-Smith, a postal inspector for the United States Post Office, declared

4

under penalty of perjury in a declaration dated November 1, 2005, and filed with the Court on November 10, 2005, the following information with respect to Jose Luis Mandujano: The last known address in this country for Jose Luis Mandujano was 22002 E. Manning Avenue, San Joaquin, California 93660. (Decl. at ¶ 3.) Jose Luis Mandujano is a fugitive and his current whereabouts were unknown. (Id.) On or about September 14, 2005, Patricia Ford-Smith contacted Colleen Maloney with the U.S. Marshals Service ("USMS") in Fresno, California to confirm the outstanding arrest warrant for Jose Luis Mandujano in case number MG-F-03-2179 issued May 1, 2003. (Id.) Ms. Maloney confirmed that the arrest warrant is still active for Jose Luis Mandujano. Id.

The Government took the following additional steps to attempt to locate Jose Luis Mandujano: on or about October 3, 2005, Patricia Ford-Smith caused a search of the Change of Address Records System ("COARS") to be done by the Central Forward Section of the Postal Service for Jose Luis Mandujano. (Id. at ¶ 6.) COARS is a database at the Postal Service of mail forwarding records. (Id.) The results were as follows: Box 1422, San Joaquin - box closed 6-10-05, no order; Box 1479, San Joaquin - box closed 3-2-04, no order; 8647 Ninth Street, San Joaquin - No forward, no street delivery. (Id.) On or about October 3, 2005, Patricia Ford-Smith caused a search of the Change of Address Information System ("COAIS") to be done for the last name of Mandujano. (Id. at ¶ 7.) COAIS is another database at the Postal Service containing change of address information. Id. The results were as follows: 22002 E. Manning Avenue, San Joaquin - no record; 8647 Ninth Street, San Joaquin - no record. (Id.) On

1  or about October 4, 2005, Patricia Ford-Smith caused a search of
2  Accurint to be done for Jose Mandujano. (Id. at ¶ 8.) Accurint is
3  a LexisNexis law enforcement database of public records and other
4  people locator sources. (Id.) The results were as follows: The
5  addresses listed by Accurint as the current addresses for Jose
6  Mandujano (P.O. Box 96 and P.O. Box 1384, San Joaquin) were
7  closed a long time ago and re-rented to other customers or are
8  still closed. (Id.)

9      On October 4, 2005, Patricia Ford-Smith caused an Anywho
10 internet search, a Switchboard internet search, and a Yahoo
11 people search to be done regarding Jose Luis Mandujano, all with
12 negative results. (Id. at ¶ 9.) On that same day, Patricia
13 Ford-Smith also caused a Google internet search to be done
14 regarding Jose Luis Mandujano with no useful results. (Id.)

15     On May 5, 2006, Plaintiff sent copies of the pertinent
16 documents, including all documents then on file concerning the
17 previous motion for default judgment, by certified mail to Jose
18 at the East Manning address; the documents were returned to the
19 government stamped, "No Street Delivery, P.O. Box # Required." On
20 May 12 and 17, the documents and the Court's findings and
21 recommendations were sent to Jose at both the Manning and Ninth
22 Street addresses by regular mail. (Decl. of Autumn Magee ¶¶ 4-7.)

23     Efforts to serve Jose personally at both addresses on May
24 26, 2006, were unsuccessful; the documents were left at the doors
25 of the residences. (Id. ¶ 12.)

26                3. Leticia Espino Mandujano

27     The marshal's certificate and paralegal Magee's declaration
28 establish that personal service upon Leticia Espino Mandujano was

attempted on July 14, 2005, at 8647 Ninth Street, San Joaquin, California 93660, resulting in inability to locate Leticia Espino Mandujano, including a first attempt at 283 South Bordeax, Kerman, California, pursuant to a case agent who reported that Leticia was living there with a brother, which resulted in a contact with a person who reported that he had not seen her in nine months, and a second attempt at Leticia's usual place of abode, which was located at 8647 Ninth Street in San Joaquin, California, during which renters at the residence stated that Leticia did not live there (Certificate, Doc. 7, filed July 29, 2005; Declaration of Magee, Doc. 14(2), filed November 10, 2005).

Other information concerning efforts to locate Leticia includes information that the last known address in this country for Leticia Mandujano was 8647 Ninth Street, San Joaquin, California 93660. (Decl. of Patricia Ford-Smith filed November 10, 2005 at ¶ 10.) She was no longer at that address, and her current whereabouts were unknown. (Id.) Efforts to locate Leticia Mandujano have been unsuccessful. (Id.) The Government took the following additional steps to attempt to locate Leticia Espino Mandujano: On or about October 4, 2005, Patricia Ford-Smith caused a search of Accurint to be done for Leticia Miramontes and Leticia Espino. (Id. at ¶ 11.) The results were as follows: No current address and no record. (Id.) On that same day, Patricia Ford-Smith caused an Anywho internet search to be done for Leticia Mandujano, San Joaquin, with negative results. (Id.) On that same day and October 13, 2005, Patricia Ford-Smith also caused a Google internet search for Miramontes, Espino and Mandujano/San Joaquin with no useful results. (Id.) On October 7,

1   2005, Patricia Ford-Smith caused a facsimile to be sent to the

2   U.S. Postal Service to check for Leticia

3   Miramontes/Mandujano/Espino at the address located at 8647 Ninth

4   Street, San Joaquin, California. (Id. at ¶ 12.) The response of

5   no street delivery was received on October 12, 2005. (Id.) On

6   that same day, Patricia Ford-Smith caused a facsimile to be sent

7   to the U.S. Postal Service to check for Leticia

8   Miramontes/Mandujano/Espino at the address located at

9   P.O. Box 1479, San Joaquin, California. (Id.) The response of box

10  closed, no (mail forwarding) order was received on October 12,

11  2005. (Id.) On or about October 7, 2005, Patricia Ford-Smith

12  caused a search of COAIS to be done for Leticia Miramontes for

13  P.O. Box 1479, San Joaquin, California. Id. at ¶ 13. The result

14  was no forwards found. (Id.) On or about October 11, 2005,

15  Patricia Ford-Smith caused a search of COAIS to be done for any

16  forwards from street address 24634 W. Manning Avenue, San

17  Joaquin, California. (Id.) The result was no forwards found in

18  any names used by Leticia Mandujano. (Id.) On or about October

19  11, 2005, Patricia Ford-Smith caused a search of COAIS to be done

20  for any forwards from street address: 8647 Ninth Street, San

21  Joaquin, California. (Id.) The result was no old or new forwards

22  found. (Id.) On or about October 11, 2005, Patricia Ford

23  Smith caused a search of COARS to be done by the Central Forward

24  Section of the Postal Service for Leticia Mandujano. (Id. at ¶

25  14.) No mail forwards were found. (Id.) On October 19, 2005,

26  Patricia Ford-Smith caused scanned photos of Leticia Mandujano

27  and Jose Mandujano to be emailed to Ralph Perez, Postmaster, San

28  Joaquin, California. (Id. at ¶ 15.) On October 20, 2005, a

1  response was received wherein Ralph Perez said that he did

2  recognize the photo of Leticia Mandujano, but he had not seen her

3  for a couple years since P.O. Box 1479, San Joaquin, California

4  was closed. (Id.)

5      On May 5, 2006, all documents were sent to Leticia at the

6  Ninth Street address by certified mail. The return receipt card

7  was subsequently received by Plaintiff's counsel, but it was not

8  signed or dated. Mailing by regular mail on May 22, 2006, was

9  attempted; the documents were returned on May 24, 2006, stamped,

10  "No Street Delivery, P.O. Box # Required." (Id. ¶¶ 8-11.)

11      After unsuccessfully attempting to serve Leticia personally

12  on May 26, 2006, the marshal left the documents at the door of

13  the residence. (Id. ¶ 13.)

14              E. Response to the Complaint

15      The declarations and the docket establish that no party has

16  responded to the complaint. Defaults were entered against Jose

17  Mario Barrera Olivares on October 7, 2005, and against Jose

18  Mandujano and Leticia Mandujano on December 21, 2005.

19              F. Motion for Default Judgment

20      Plaintiff filed an ex parte application for default judgment

21  on May 3, 2007. No opposition has been filed. By separate order,

22  the Court has vacated the hearing on the motion, and the matter

23  has been submitted to the Court.

24      II. Standards Governing a Motion for Default Judgment

25      A court has the discretion to enter a default judgment

26  against one who is not an infant, incompetent, or member of the

27  armed services where the claim is for an amount that is not

28  certain on the face of the claim and where 1) the defendant has

9

been served with the claim; 2) the defendant's default has been entered for failure to appear; 3) if the defendant has appeared in the action, the defendant has been served with written notice of the application for judgment at least three days before the hearing on the application; and 4) the court has undertaken any necessary and proper investigation or hearing in order to enter judgment or carry it into effect. Fed. R. Civ. P. 55(b); <u>Alan Neuman Productions, Inc. v. Albright,</u>  862 F.2d 1388, 1392 (9th Cir. 1988). Factors that may be considered by courts in exercising discretion as to the entry or setting aside of a default judgment include the nature and extent of the delay, <u>Draper v. Coombs</u>, 792 F.2d 915, 924-925 (9th Cir. 1986); the possibility of prejudice to the plaintiff, <u>Eitel v. McCool</u>, 782 F.2d 1470, 1471-72 (9th Cir.1986); the merits of plaintiff's substantive claim, <u>id.</u>; the sufficiency of the allegations in the complaint to support judgment, <u>Alan Neuman Productions, Inc.</u>, 862 F.2d at 1392; the amount in controversy, <u>Eitel v. McCool</u>, 782 F.2d at 1471-1472; the possibility of a dispute concerning material facts, <u>id.</u>; whether the default was due to excusable neglect, <u>id.</u>; and the strong policy underlying the Federal Rules of Civil Procedure that favors decisions on the merits, <u>id.</u>

A default judgment generally bars the defaulting party from disputing the facts alleged in the complaint, but the defaulting party may argue that the facts as alleged do not state a claim. <u>Alan Neuman Productions, Inc. v. Albright</u>, 862 F.2d 1388, 1392. Thus, well pleaded factual allegations, except as to damages, are taken as true; however, necessary facts not contained in the pleadings, and claims which are legally insufficient, are not

10

established by default. <u>Cripps v. Life Ins. Co. of North America,</u> 980 F.2d 1261, 1267 (9th Cir. 1992); <u>TeleVideo Systems, Inc. v. Heidenthal</u>, 826 F.2d 915, 917 (9th Cir. 1987).

    III.  <u>Notice, Status of the Parties, and Response to the Complaint</u>

        A. <u>Governing Standards</u>

    The Civil Asset Forfeiture Reform Act of 2000 (CAFRA), Pub. L. No. 106-185, 114 Stat. 202, 106th Cong. (2000) was signed into law on April 25, 2000. Section 21 of the Act provides that the amendments made by the Act apply to any forfeiture proceeding commenced on or after the effective date of the Act, that is, 120 days after the date of enactment. The instant case postdates enactment of the statute, and thus, CAFRA applies to the instant proceeding.

    With respect to forfeitures of real property, 18 U.S.C. § 985(a) provides that notwithstanding any over provision of law, all civil forfeitures of real property and interests in real property shall proceed as judicial forfeitures. Section 985(f) provides that the section applies only to civil forfeitures of real property and interests in real property.

    With respect to default judgments in proceedings that are in rem actions for forfeiture, both the general Federal Rules of Civil Procedure and the Supplemental Rules for Certain Admiralty and Maritime Claims (Supp. R.) apply. Supp. R. A(1)(B), <u>United States v. Real Property</u>, 135 F.3d 1312, 1315 (9th Cir. 1998). However, the latter rules prevail if there is an inconsistency. Supp. R. A(2). Supp. R. C applies to in rem actions in general. Supp. R. G(1) provides:

Supp. R. G(1) states:

1) **Scope.** This rule governs a forfeiture action in
rem arising from a federal statute. To the extent
that this rule does not address an issue, Supplemental
Rules C and E and the Federal Rules of Civil Procedure
also apply.

Supp. R. G(3) provides:

a) **Real Property.** If the defendant is real property,
the government must proceed under 18 U.S.C. § 985.

With respect to Jose Mandujano, or any other person who is
owner of the property, Title 18 U.S.C. § 985(c)(1) specifically
provides:

(c)(1) The Government shall initiate a civil forfeiture
action against real property by--
(A) filing a complaint for forfeiture;
(B) posting a notice of the complaint on the property;
and
(C) serving notice on the property owner, along with a copy
of the complaint.
(2) If the property owner cannot be served with the notice
under paragraph (1) because the owner--
(A) is a fugitive;
(B) resides outside the United States and efforts at
service pursuant to rule 4 of the Federal Rules of
Civil Procedure are unavailing; or
(C) cannot be located despite the exercise of due diligence,
constructive service may be made in accordance with
the laws of the State in which the property is located.

Fed. R. Civ. P. 4(n) provides:

(1) If a statute of the United States so provides,
the court may assert jurisdiction over property.
Notice to claimants of the property shall then
be sent in the manner provided by the statute
or by service of a summons under this rule.

B. Posting, Publication, and Notice

1. Posting

The Civil Asset Forfeiture Reform Act of 2000 (CAFRA), Pub.
L. No. 106-185, 114 Stat. 202, 106th Cong. (2000) was signed into
law on April 25, 2000. Section 21 of the Act provides that the
amendments made by the Act apply to any forfeiture proceeding

commenced on or after the effective date of the Act, that is, 120 days after the date of enactment. The instant case postdates enactment of the statute, and thus, CAFRA applies to the instant proceeding.

Under CAFRA, all civil forfeitures of real property and interests therein shall proceed as judicial forfeitures. 18 U.S.C. § 985(a). Except when exigent circumstances have been determined to be present and an exceptional warrant procedure is followed, real property that is the subject of a civil forfeiture action shall not be seized[3] before entry of an order of forfeiture, nor shall occupants or owners be evicted or deprived of use and enjoyment of the property. § 985(b)(1), (d). Instead, if real property is posted as required by statute, it is unnecessary for the Court to issue an arrest warrant in rem, or to take any other action to establish in rem jurisdiction over the property. § 985(c)(3).

Here, the marshal's certification of posting the complaint and notice on the property in July 2005 reflects compliance with 18 U.S.C. § 985(c)(1)(B).

### 2. Service

The complaint alleges that the owner of the property was Jose Juis Mandujano, who purchased it in 1999 by way of payments made by Leticia Mandujano, wife of Jose Mario Barrera Olivares. (Cmplt. pp. 3-4.) It also alleges that one of the California identifications of Jose Mario Barrera Olivares found by law enforcement was Jose Luis Mandujano. It is unclear whether there

---

[3] The filing of a lis pendens and execution of a writ of entry is not a seizure. § 985(b)(2).

1  are two or three people actually involved and thus whether some

2  or all of the three people involved were owners of the property.

3        Plaintiff refers to previous proceedings before this Court

4  but does not address whether the requirements of § 18 U.S.C. §

5  985(c) have been met. Plaintiff does not address any California

6  law concerning service. Nevertheless, in the interest of economy,

7  the Court will proceed with the analysis without the assistance

8  of Plaintiff on these issues.

9        The unsuccessful attempts at personal service that included

10 leaving copies of the papers at the door of the residences did

11 not meet the requirements of Fed. R. Civ. P. 4(e) because the

12 certifications of service reveal that papers were not left with a

13 person of suitable age and discretion then residing there.

14       Section 985(c) permits constructive service to be made in

15 accordance with the laws of the State in which the property is

16 located. Under California law, it is established that even where

17 there is a statutory basis of jurisdiction over a person or

18 thing, and notice is given in a manner that will satisfy the

19 requirements of constitutional due process, statutes nevertheless

20 prescribe the manner in which notice shall be given, and

21 generally strict compliance with the statutory procedure of

22 notice is required in order to obtain jurisdiction. People v.

23 Green, 74 Cal. 400, 405-06 (1887); Stamps v. Superior Court, 14

24 Cal.App.3d 108, 110 (1971); Arnold v. Newhall County Water

25 District, 11 Cal.App.3d 794, 799-802 (1970) (strict compliance

26 with publication statute governing acquisition of in rem

27

28

1  jurisdiction).[4]

2       Cal. Civ. Proc. Code § 415.20 provides:

3       (a) In lieu of personal delivery of a copy of the
        summons and complaint to the person to be served as
4       specified in Section 416.10, 416.20, 416.30, 416.40,
        or 416.50, a summons may be served by leaving a copy
5       of the summons and complaint during usual office hours
        in his or her office or, if no physical address is known,
6       at his or her usual mailing address, other than a
        United States Postal Service post office box,
7       with the person who is apparently in charge thereof,
        and by thereafter mailing a copy of the summons and
8       complaint by first- class mail, postage prepaid to the
        person to be served at the place where a copy of
9       the summons and complaint were left. When service is
        effected by leaving a copy of the summons and complaint
10      at a mailing address, it shall be left with a person at
        least 18 years of age, who shall be informed of the
11      contents thereof. Service of a summons in this manner
        is deemed complete on the 10th day after the mailing.

12
        (b) If a copy of the summons and complaint cannot with
13      reasonable diligence be personally delivered to the
        person to be served, as specified in Section 416.60,
14      416.70, 416.80, or 416.90, a summons may be served by
        leaving a copy of the summons and complaint at the
15      person's dwelling house, usual place of abode,
        usual place of business, or usual mailing address
16      other than a United States Postal Service post office box,
        in the presence of a competent member of the household
17      or a person apparently in charge of his or her office,
        place of business, or usual mailing address other
18      than a United States Postal Service post office box,
        at least 18 years of age, who shall be informed of the
19      contents thereof, and by thereafter mailing a copy of the
        summons and of the complaint by first-class mail, postage
20      prepaid to the person to be served at the place where
        a copy of the summons and complaint were left.
21      Service of a summons in this manner is deemed
        complete on the 10th day after the mailing.

22
        Generally several attempts to serve a party qualify as due
23
diligence under the California provisions for substituted service
24
under Cal. Civ. Proc. Code § 415.20. <u>Bonita Packing Co. v.</u>
25
<u>O'Sullivan</u>, 165 F.R.D. 610, 613 (C.D.Cal. 1995). It appears that
26

27  _____

28      [4] A more liberal construction is permitted where there is actual notice. <u>Stafford v. Mach</u>, 64 Cal.App.4th
    1174, 1182-83 (1998).

Plaintiff has diligently attempted to effectuate personal service on Jose Luis Mandujano and Leticia Espino Mandujano.

Again, because papers were not left with the pertinent persons at the residence, the attempted personal service did not meet the requirements of this provision of California law, and substituted service was not effected.

Constructive service may be effected in California in the form of service by publication. Cal. Civ. Proc. Code § 415.50 provides in pertinent part:

> (a) A summons may be served by publication if upon affidavit it appears to the satisfaction of the court in which the action is pending that the party to be served cannot with reasonable diligence be served in another manner specified in this article and that either:
>
> (1) A cause of action exists against the party upon whom service is to be made or he or she is a necessary or proper party to the action.
>
> (2) The party to be served has or claims an interest in real or personal property in this state that is subject to the jurisdiction of the court or the relief demanded in the action consists wholly or in part in excluding the party from any interest in the property.
>
> (b) The court shall order the summons to be published in a named newspaper, published in this state, that is most likely to give actual notice to the party to be served. If the party to be served resides or is located out of this state, the court may also order the summons to be published in a named newspaper outside this state that is most likely to give actual notice to that party. The order shall direct that a copy of the summons, the complaint, and the order for publication be forthwith mailed to the party if his or her address is ascertained before expiration of the time prescribed for publication of the summons. Except as otherwise provided by statute, the publication shall be made as provided by Section 6064 of the Government Code unless the court, in its discretion, orders publication for a longer period.
>
> (c) Service of a summons in this manner is deemed

16

1   complete as provided in Section 6064 of the Government Code.

2   Cal. Govt. Code § 6064 provides:

3       Publication of notice pursuant to this section
        shall be once a week for four successive weeks.
4       Four publications in a newspaper regularly published
        once a week or oftener, with at least five days
5       intervening between the respective publication
        dates not counting such publication dates, are sufficient.
6       The period of notice commences with the first day
        of publication and terminates at the end of the
7       twenty-eighth day, including therein the first day.

8       Here, although no court order for publication was obtained,

9   the declaration of publication filed on December 5, 2006, shows

10  that the pertinent requirements of publication were met. Further,

11  the declarations submitted to the Court and the entirety of the

12  docket reflect that the addresses and whereabouts of the persons

13  to be served could not with reasonable diligence be discovered,

14  and they could not with reasonable diligence be served by other

15  means. Diligence is a relative term determined by the

16  circumstances of the case, but it connotes a thorough and

17  systematic inquiry and investigation in good faith. Watts v.

18  Crawford, 10 Cal.4th 743, 749 n.5 (1995); Judicial Counsel

19  Comment to § 415.50 (West 2004). Plaintiff's repeated efforts to

20  determine the addresses and whereabouts of the pertinent

21  individuals and to serve those individuals by other means are

22  sufficient. See, Chapman v. Moore, 151 Cal. 509, 513-14 (1907)

23  (permitting the drawing of reasonable inferences from the

24  affidavit of due diligence).

25      The Court concludes that the publication reflected in the

26  declaration filed December 5, 2006, satisfies the requirements of

27  Cal. Civ. Proc. Code § 415.50 and Cal. Govt. Code § 6064, and

28  constitutes constructive service on the owners within the meaning

17

of 18 U.S.C. § 985(c)(2).

###### 3. <u>Notice</u>

With respect to notice to claimants, there is no express provision in 18 U.S.C. § 985. Supp. R. G(4)(b)[5] provides:

> (b) Notice to Known Potential Claimants.
> (i) Direct Notice Required. The government must send notice of the action and a copy of the complaint to any person who reasonably appears to be a potential claimant on the facts known to the government before the end of the time for filing a claim under Rule G(5)(a)(ii)(B).
> (ii) Content of the Notice. The notice must state:
>> (A) the date when the notice is sent;
>> (B) a deadline for filing a claim, at least 35 days after the notice is sent;
>> (C) that an answer or a motion under Rule 12 must be filed no later than 20 days after filing the claim; and
>> (D) the name of the government attorney to be served with the claim and answer.
> (iii) Sending Notice.
>> (A) The notice must be sent by means reasonably calculated to reach the potential claimant.
>> (B) Notice may be sent to the potential claimant or to the attorney representing the potential claimant with respect to the seizure of the property or in a related investigation, administrative forfeiture proceeding, or criminal case.
>> (C) Notice sent to a potential claimant who is incarcerated must be sent to the place of incarceration.
>> (D) Notice to a person arrested in connection with an offense giving rise to the forfeiture who is not incarcerated when notice is sent may be sent to the address that person last gave to the agency that arrested or released the person.
>> (E) Notice to a person from whom the property was seized who is not incarcerated when notice is sent may be sent to the last address that person gave to the agency that seized the property.
> (iv) When Notice Is Sent. Notice by the following means is sent on the date when it is placed in the mail, delivered to a commercial carrier, or sent by electronic mail.

---

[5] Although it is generally presumed that a change in a substantive statute will not apply retroactively, a procedural rule changed after the commencement of a suit may generally be applied to the suit without raising concerns about retroactivity because of diminished reliance interests in matters of procedure and because rules of procedure generally regulate secondary rather than primary conduct. The application of a new rule of procedure ordinarily depends upon the posture of the particular case. <u>Landgraf v. USI Film Products</u>, 511 U.S. 244, 275 (1994).

> (v) Actual Notice. A potential claimant who had actual notice of a forfeiture action may not oppose or seek relief from forfeiture because of the government's failure to send the required notice.

Local Rule A-500 provides that the local admiralty and in rem rules apply to all in rem and quasi in rem proceedings and control all such proceedings in the event of an inconsistency between the in rem rules and the local rules ending in 100 through 399

Local Rule A-540(d) provides that a party seeking a default judgment in an action in rem shall show to the satisfaction of the Court that due notice of the action and arrest of the property has been given by publication, by personal service on the person having custody of the property, by personal service or by certified mail, return receipt requested, to every person who has not appeared and is known to have an interest, provided, that failure to give actual notice to such other person may be excused upon a satisfactory showing of diligent efforts to give such notice without success. Specifically, if the defendant property is of such character that there exists a registry of recorded property interests in the property, the party must obtain information from each such registry and give notice to the persons named in the records of each such registry. Local Rule A-540(b).

Local Rule A-540(d) provides that upon a showing that no one has appeared to claim the property and give security, and that due notice of the action and arrest of the property has been given, a party may move for judgment at any time after the time for answer has expired. If no one has appeared, the party may

1  have an ex parte hearing before the Court and judgment without

2  further notice, although if any person has appeared and does not

3  join in the motion, such person shall be given seven court days

4  notice of the motion.

5      Here, the complaint alleged that Leticia and her husband,

6  Jose Mario Barrera Olivares, had told law enforcement officers

7  that they had lived at the Ninth street address for several

8  years. The government searched for addresses, repeatedly

9  attempted personal service, and also sent notice by certified and

10 regular mail to the last known addresses of Leticia and Jose Luis

11 Mandujano. The notice was sent by means reasonably calculated to

12 reach the potential claimant to their last known addresses. This

13 notice appears to satisfy the requirements of the pertinent

14 rules. Cf. Garcia v. Meza, 235 F.3d 287, 290 (7th Cir. 2000).

15                        4. Publication

16     Section 985 makes no express mention of publication.

17 However, Supp. R. G(4) provides:

18     (a) Notice by Publication.
       (i) When Publication Is Required. A judgment
19     of forfeiture may be entered only if the government
       has published notice of the action within a
20     reasonable time after filing the complaint
       or at a time the court orders. But notice need not be
21     published if:
           (A) the defendant property is worth less than
22         $1,000 and direct notice is sent under Rule G(4)(b)
           to every person the government can reasonably
23         identify as a potential claimant; or
           (B) the court finds that the cost of publication
24         exceeds the property's value and that other means
           of notice would satisfy due process.
25     (ii) Content of the Notice. Unless the court orders
       otherwise, the notice must:
26         (A) describe the property with reasonable
           particularity;
27         (B) state the times under Rule G(5) to file a
           claim and to answer; and
28         (C) name the government attorney to be served

```
                    with the claim and answer.
             (iii) Frequency of Publication. Published notice must
                    appear:
                    (A) once a week for three consecutive weeks; or
                    (B) only once if, before the action was filed,
                    notice of nonjudicial forfeiture of the same
                    property was published on an official internet
                    government forfeiture site for at least 30
                    consecutive days, or in a newspaper of general
                    circulation for three consecutive weeks in a district
                    where publication is authorized under
                    Rule G(4)(a)(iv).
             (iv) Means of Publication. The government should select
             from the following options a means of publication
             reasonably calculated to notify potential claimants
             of the action:
                    (A) if the property is in the United States,
                    publication in a newspaper generally circulated
                    in the district where the action is filed, where
                    the property was seized, or where property that
                    was not seized is located;
                    (B) if the property is outside the United States,
                    publication in a newspaper generally circulated
                    in a district where the action is filed, in a
                    newspaper generally circulated in the country
                    where the property is located, or in legal notices
                    published and generally circulated in the country
                    where the property is located; or
                    (C) instead of (A) or (B), posting a notice on an
                    official internet government forfeiture site for
                    at least 30 consecutive days.
```

In this case, Plaintiff's proof of publication for three consecutive weeks in July and August 2005 in <u>The Business Journal</u>, filed on September 27, 2005, meets the requirements of the rule.

### 5. <u>No Warrent of Arrest in Rem</u>

Under CAFRA, all civil forfeitures of real property and interests therein shall proceed as judicial forfeitures. 18 U.S.C. § 985(a). Except when exigent circumstances have been determined to be present and an exceptional warrant procedure is followed, real property that is the subject of a civil forfeiture

1  action shall not be seized[6] before entry of an order of

2  forfeiture, nor shall occupants or owners be evicted or deprived

3  of use and enjoyment of the property. § 985(b)(1), (d). Instead,

4  if real property is posted as required by statute, it is

5  unnecessary for the Court to issue an arrest warrant in rem, or

6  to take any other action to establish in rem jurisdiction over

7  the property. § 985(c)(3).

8              C. Status of the Parties

9    Magee declared that Defendant Jose Mario Barrera Olivares

10 was not an infant, incompetent, or a person in military service.

11 (Doc. 11(2), filed September 27, 2005.) Magee declared in a

12 declaration dated November 4, 2005, that Jose Luis Mandujano and

13 Leticia Espino Mandujano were not infants, incompetents, or

14 members of the military service. (Doc. 14(2), filed November 10,

15 2005.) Thus, it appears that no issues concerning the competence

16 or status of the parties would render a default judgment

17 inappropriate.

18              D. Response to the Complaint

19    Title 18 U.S.C. § 985 does not contain any provision with

20 respect to a response to the complaint.

21    Title 18 U.S.C. § 983 provides general rules for civil

22 forfeiture proceedings. Section 983(a)(3)(A) provides that within

23 a specified time period after nonjudicial proceedings, the

24 government shall file a complaint for forfeiture in the manner

25 set forth in the Supplemental Rules of Certain Admiralty and

26 Maritime Claims. Any person claiming an interest in the seized

27

28      [6] The filing of a lis pendens and execution of a writ of
    entry is not a seizure. § 985(b)(2).

property may file a claim asserting such person's interest in the

property in the manner set forth in the Supp. Rules, except that

such claim may be filed not later than thirty days after the date

of service of the government's complaint or, as applicable, not

later than thirty days after the date of final publication of

notice of the filing of the complaint. Further, a person

asserting an interest in the seized property shall file an answer

to the complaint not later than twenty days after the date of the

filing of the claim. 18 U.S.C. § 983(a)(4).

Supp. R. G(5) provides:

(5) Responsive Pleadings.

(a) Filing a Claim.

(i) A person who asserts an interest in the defendant
property may contest the forfeiture by filing a claim
in the court where the action is pending. The claim must:
   (A) identify the specific property claimed;
   (B) identify the claimant and state the claimant's
   interest in the property;
   (C) be signed by the claimant under penalty
   of perjury; and
   (D) be served on the government attorney designated
   under Rule G(4)(a)(ii)(C) or (b)(ii)(D).
(ii) Unless the court for good cause sets a different
time, the claim must be filed:
   (A) by the time stated in a direct notice sent
   under Rule G(4)(b);
   (B) if notice was published but direct notice
   was not sent to the claimant or the claimant's
   attorney, no later than 30 days after final
   publication of newspaper notice or legal notice
   under Rule G(4)(a) or no later than 60 days after
   the first day of publication on an official internet
   government forfeiture site; or
   (C) if notice was not published and direct notice
   was not sent to the claimant or the claimant's
   attorney:
      (1) if the property was in the government's
      possession, custody, or control when the
      complaint was filed, no later than 60 days
      after the filing, not counting any time when
      the complaint was under seal or when the
      action was stayed before execution of a
      warrant issued under Rule G(3)(b); or

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                  (2) if the property was not in the
government's possession, custody, or
control when the complaint was filed,
no later than 60 days after the government
complied with 18 U.S.C. § 985(c) as to real
property, or 60 days after process was
executed on the property under Rule G(3).

(iii) A claim filed by a person asserting an interest
as a bailee must identify the bailor, and if filed on
the bailor's behalf must state the authority to do so.

(b) Answer. A claimant must serve and file an answer to
the complaint or a motion under Rule 12 within 20 days
after filing the claim. A claimant waives an objection
to in rem jurisdiction or to venue if the objection is
not made by motion or stated in the answer.

Here, the evidence establishes that no one has filed a statement or answer.

As to Olivares, who was personally served on July 6, 2005, the Clerk properly entered default on October 7, 2005.

With respect to Jose Luis Mandujano, direct notice was not sent to the last known address until May 5, 2006. Therefore, the Clerk's entry of default as to Jose on December 21, 2005, was premature. However, the Court will order that the entry of default be vacated and the Clerk be directed to enter default.

With respect to Leticia Espino Mandujano, direct notice was sent to the last known address on May 5, 2006. Therefore, the Clerk's entry of default as to Leticia on December 21, 2005, was premature. However, the Court will order that the entry of default be vacated and the Clerk be directed to enter default.

The Court concludes that Plaintiff has established that the three individuals did not file any responsive documents within the pertinent time limits. The Court further notes that a failure to comply with the requirements of the supplemental rules precludes one from establishing standing as a party, and results

1   in an inability to challenge a default judgment. <u>See</u>, <u>United</u>

2   <u>States v. Real Property</u>, 135 F.3d 1312, 1316-17 (9th Cir. 1998).

3       IV. <u>Legal Sufficiency of the Complaint</u>

4         A. <u>Facts</u>

5      In this case, the Government alleges in its verified

6   complaint that the Defendant real property is located at 8647

7   Ninth Street, San Joaquin, California, APN:033-091-24, and is

8   more fully described as:

9       Lots 25 and 26 in Block 10 of the Townsite of San
    Joaquin, (now City of San Joaquin), in the County

10      of Fresno, State of California, according to the map
    thereof recorded in Book 7, Pages 83, 84 and 85 of Plats,

11      Fresno County Records.
    APN:033-091-24.

12  (Complt. at 1-2.) The allegations in the complaint arise out of

13  the same investigation underlying the parallel criminal

14  prosecution of Antonio Mandujano Espino, Rosa Mandujano, Jose

15  Mario Barrera Olivares, Elisa Espino Martinez, Ruben Espino,

16  Manuel Espino Martinez, and others in <u>United States v. Antonio</u>

17  <u>Mandujano Espino, et al.</u>, CR-F-03-5199 REC.

18     The essential facts alleged in the complaint are that

19  Defendant real property was purchased in 1999 and 2000 by Jose

20  Mario Barrera Olivares (Olivares), an unmarried man, who was

21  actually the husband of Leticia Mandujano, also known as Leticia

22  Espino Mandujano (Leticia), and who took title to the property

23  using a false name, namely, Jose Luis Mandujano. The property was

24  purchased with proceeds from a scheme that operated from February

25  1998 through April 30, 2003, whereby Olivares, Leticia, and

26  others conspired to file, and did file, false telephonic claims

27  and mailed false claim forms to Unemployment Insurance (UI)

28

agents; obtained UI benefit checks by using the identities and
social security numbers of unknowing individuals and by listing
various post office boxes under their control as being the
mailing addresses of the claimants; falsely endorsed and then
deposited the checks into business bank accounts under their
control, using the accounts to make it appear that numerous UI
claimants actually went to the business to cash their UI benefit
checks; withdrew substantial cash withdrawals from the accounts;
and used the accounts to promote the scheme as well as to buy
real property. (Complt at 2-3.) Olivares was sentenced for his
role in the scheme on August 23, 2004, and was ordered to pay
$1,331,824.00 in restitution jointly with a codefendant.

Further, Jane Avila, the former owner of Defendant real
property, conducted numerous real estate transactions with
Olivares, Jose Luis Mandujano, and Leticia, including selling the
Defendant real property to Jose Luis Mandujano for $75,000 on or
about November 29, 1999; the majority of payments for the real
property were made by Leticia between January 1999 and March 18,
2000, after which a grant deed issued from Avila and her husband
to Jose Luis Mandujano, an unmarried man. (Id. at 3-4.) Olivares
was arrested at Defendant real property in April 2004, and he
told law enforcement officers that he had lived there for three
years with his wife, Leticia, who admitted having lived at the
property for five years. Law enforcement searched the property
and located numerous California identifications for Olivares, one
being in the name of Jose Luis Mandujano, recorded owner of the
real property. Corroborative information revealed that one who
was actually named Jose Luis Mandujano Espino had no real

1  property. Further, one Rosa Mandujano, who had been sentenced in

2  connection with charges concerning the scheme, told law

3  enforcement that Leticia was the main leader in the UI scheme,

4  Leticia had purchased about six homes in San Joaquin with the

5  money she obtained from the UI fraud, and Leticia had no job or

6  legitimate income. Rosa stated that her husband, Antonio

7  Mandujano, had a brother named Jose Luis Mandujano, but she

8  believed that Leticia's husband, Jose Mario Barrera Olivares,

9  stole Jose Luis Mandujano's identity by obtaining a California

10 drivers license in his name and purchased the real property using

11 the false identification. EDD wage records revealed no history of

12 wages for Olivares or Leticia. (Id. at 4-6.)

13          B. Analysis

14     With respect to forfeitures of real property, 18

15 U.S.C.(c)(1) provides that the government shall initiate a civil

16 forfeiture action against real property by filing a complaint for

17 forfeiture.

18                1. Requirements of Supp. Rule G

19     Supp. R. Adm. G(2) states the following with respect to a

20 complaint in an action in rem arising from a federal statute:

21     (2) Complaint. The complaint must:

22     (a) be verified;
       (b) state the grounds for subject-matter jurisdiction,
23     in rem jurisdiction over the defendant property,
       and venue;
24     (c) describe the property with reasonable particularity;
       (d) if the property is tangible, state its location
25     when any seizure occurred and -- if different -- its
       location when the action is filed;
26     (e) identify the statute under which the forfeiture
       action is brought; and
27     (f) state sufficiently detailed facts to support a
       reasonable belief that the government will be able
28     to meet its burden of proof at trial.

                                  27

1    The Court finds that the requirements of Supp. Rule G(2)(a)
2 through (e) have been met.

3                    2. <u>Legal Sufficiency</u>

4    As to the allegations required by the statute under which
5 the action is brought, under CAFRA, the burden of proof is on the
6 Government to establish, by a preponderance of the evidence, that
7 the property is subject to forfeiture. 18 U.S.C. § 983(c)(1).

8    Title 18 U.S.C. § 981(a)(1)(C) in pertinent part categorizes
9 as subject to forfeiture to the United States any property, real
10 or personal, which constitutes, or is derived from, proceeds
11 traceable to a violation of § 1028, fraud and related activity in
12 connection with identification documents and information.

13    Title 18 § 981(a)(1)(C) also makes subject to forfeiture to
14 the United States any property, real or personal, which
15 constitutes proceeds or is derived from proceeds traceable to any
16 offense constituting "specified unlawful activity" as defined in
17 18 U.S.C. § 1956(c)(7), or a conspiracy to commit such an
18 offense.

19    Plaintiff alleges in the complaint (at 6) that § 1341, mail
20 fraud, constitutes an offense that is "specified unlawful
21 activity" as defined in 18 U.S.C. § 1956(c)(7). Section
22 1956(c)(7)(A) provides in pertinent part that "specified unlawful
23 activity" includes any act or activity constituting an offense
24 listed in § 1961(1) of this title, with inapplicable exceptions.
25 Section 1961(1)(B) includes in racketeering activity any act
26 indictable under 18 U.S.C. § 1341 relating to mail fraud. Thus,
27 property constituting proceeds from, or property traceable to
28 proceeds from, mail fraud would be subject to forfeiture pursuant

to 18 U.S.C. § 981(a)(1)(C).

Title 18 U.S.C. § 1341 provides:

Whoever, having devised or intending to devise any
scheme or artifice to defraud, or for obtaining money
or property by means of false or fraudulent pretenses,
representations, or promises, or to sell, dispose of,
loan, exchange, alter, give away, distribute, supply,
or furnish or procure for unlawful use any counterfeit
or spurious coin, obligation, security, or other
article, or anything represented to be or intimated or
held out to be such counterfeit or spurious article,
for the purpose of executing such scheme or artifice or
attempting so to do, places in any post office or
authorized depository for mail matter, any matter or
thing whatever to be sent or delivered by the Postal
Service, or deposits or causes to be deposited any
matter or thing whatever to be sent or delivered by any
private or commercial interstate carrier, or takes or
receives therefrom, any such matter or thing, or
knowingly causes to be delivered by mail or such
carrier according to the direction thereon, or at the
place at which it is directed to be delivered by the
person to whom it is addressed, any such matter or
thing, shall be fined under this title or imprisoned
not more than 20 years, or both. If the violation
affects a financial institution, such person shall be
fined not more than $1,000,000 or imprisoned not more
than 30 years, or both.

To convict one of mail fraud, the government must prove 1) a

scheme to defraud existed; and 2) the defendant used the mails

for the purpose of executing the scheme. United States v. Serang,

156 F.3d 910, 914 (9th Cir. 1998). Further, the government must

prove a specific intent to defraud. United States v. Peters, 962

F.2d 1410, 1414 (9th Cir.1992). Here, the scheme and the use of

the mails is expressly alleged. The specific intent to defraud

may be readily inferred from the details regarding the scheme.

The government must establish the requisite nexus between

the substantive offense of mail/wire fraud, and the asset that it

seeks to forfeit. The requisite nexus in the case is determined

by reference to 18 U.S.C. § 981(a)(1)(C), which provides in

substance that property subject to forfeiture to the United
States includes any property, real or personal, which constitutes
or is derived from proceeds traceable to a violation of sections
1956 and 1341.

It is alleged that the property sought to be forfeited is,
or is derived from, proceeds traceable to violations of 18 U.S.C.
§ 1341. There are allegations that the fraudulent unemployment
insurance scheme was operated by Defendants and others between
February 1998 and April 2003; the scheme generated over
$8,000,000.00 and was accompanied by substantial cash withdrawals
from accounts into which the proceeds were deposited; Defendants
had no legitimate income; and some of the money was used to buy
the subject real property, where Defendants Leticia and Jose
resided, as demonstrated by statements of persons involved in the
scheme as well as the circumstances of the sale, its terms, and
payments to Jane Avila. (Cmplt. at 2-6.)

Accordingly, the complaint sufficiently states a claim for
forfeiture of property pursuant to 18 §§ 981(a)(1)(C) and
1956(c)(7).

V. Judgment

Local Rule A-540(d) provides that upon a showing that no one
has appeared to claim the property and give security, and that
due notice of the action and arrest of the property has been
given, a party may move for judgment at any time after the time
for answer has expired; if no one has appeared, the party may
have an ex parte hearing before the Court and judgment without
further notice.

Here, no one has claimed an interest in the property or

30

1 otherwise responded to the complaint. No just cause for delay

2 appears. It is apparent from the declarations submitted to the

3 Court that none of the owners or potential claimants is an

4 infant, incompetent, or member of the armed services. There does

5 not appear to be any reason why the general policy in favor of a

6 decision on the merits would warrant refusing to enter the

7 requested default judgment.

8    Accordingly, the Court finds that Plaintiff has shown its

9 entitlement to a default judgment of forfeiture.

10    VI. Recommendation

11    Therefore, it IS RECOMMENDED that

12    1) The Clerk of Court BE DIRECTED to vacate the entry of

13 default as to Jose Luis Mandujano and Leticia Espino Mandujano

14 previously entered on December 21, 2005, and to enter forthwith

15 default as to Jose Luis Mandujano and Leticia Espino Mandujano;

16 and

17    2) Plaintiff's second motion for default judgment BE

18 GRANTED; and

19    3) Plaintiff IS ENTITLED to, and the Clerk SHOULD ENTER, a

20 judgment that

21        a) The interest/s of Jose Luis Mandujano, Leticia

22 Espino Mandujano, and Jose Mario Barrera Olivares in the

23 Defendant real property are forfeited to the United States of

24 America; and

25        b) The right, title, and interest of potential

26 claimants Jose Luis Mandujano, Leticia Espino Mandujano, and Jose

27 Mario Barrera Olivares in the Defendant property are forfeited to

28 the United States of America pursuant to 21 U.S.C. § 881(a)(6),

31

1 and are vested in the United States; and

2      c) All persons claiming any right, title, or interest

3 in or to the Defendant property have defaulted and no longer have

4 any right, title, or interest in the Defendant property

5 whatsoever; and

6      4. The Clerk ENTER final judgment of forfeiture for

7 Plaintiff United States.

8      This report and recommendation is submitted to the United

9 States District Court Judge assigned to the case, pursuant to the

10 provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the

11 Local Rules of Practice for the United States District Court,

12 Eastern District of California. Within thirty (30) days after

13 being served with a copy, any party may file written objections

14 with the court and serve a copy on all parties. Such a document

15 should be captioned "Objections to Magistrate Judge's Findings

16 and Recommendations." Replies to the objections shall be served

17 and filed within ten (10) court days (plus three days if served

18 by mail) after service of the objections. The Court will then

19 review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636

20 (b)(1)(C). The parties are advised that failure to file

21 objections within the specified time may waive the right to

22 appeal the District Court's order. Martinez v. Ylst, 951 F.2d

23 1153 (9th Cir. 1991).

24 IT IS SO ORDERED.

25 **Dated:   July 27, 2007**          **/s/ Sandra M. Snyder**
                              UNITED STATES MAGISTRATE JUDGE

26

27

28